CYRUS GURNEY *vs.* ELIZABETH HOWE, Administratrix.

A record, kept as required by the regulations of the post-office department under the U. S. St. of 1855, c. 173, of registered letters received at a post-office, is admissible in evidence, without the testimony of the clerk who actually kept it.

A mistake in the date of the receipt of a letter, as stated in a record of registered letters kept according to the U. S. St. of 1855, c. 173, and produced by the postmaster, is not conclusive, but may be controlled by his testimony of the ordinary course of the mails.

A letter containing money sent by a debtor to his creditor through the post-office is at the risk of the debtor, unless that mode of remittance is authorized by the creditor, either by express direction or by the usual course of dealing between the parties.

ACTION OF CONTRACT on a promissory note made by Edward C. Howe, the defendant's intestate, to Cyrus G. Gurney, and indorsed by him to the plaintiff. Answer, payment to Cyrus G Gurney.

At the trial in the court of common pleas, before *Sanger*, J., it appeared that Edward C. Howe on the 19th of June 1855 deposited in the post-office at South Abington a letter, containing in bank bills the amount then due on the note, and directed to Cyrus G. Gurney at Taunton, and on which three cents were prepaid by stamp, and three cents by cash; and there was evidence tending to show that the letter was forwarded in due course of mail by the postmaster at South Abington to Taunton, together with a letter bill on which he entered " 1 letter with postage, 3 cents cash, 3 cents stamp."

The postmaster at Taunton, being called as a witness by the defendant, testified that in due course of mail the letter should have been received at his office on the evening of June 20th; and that he had no recollection of the receipt of any particular letters at that time. But he produced what purported to be a record of letters received at his office at and about that time, which, he testified, was required by the law of the United States to be made and kept in his office*; but that it was not made by him, but was kept by his clerk, who was not present; that he had compared the record with the letter bill, of which it was a transcript, and which he had since forwarded to Washington, as required by law. The judge, against the plaintiff's objection, permitted the record to be read and shown to the jury.

The record was divided into columns, the first of which showed the date when, and the second the places whence, the letters were received. At the top of the page in question was entered June 21st, which was the only date upon this page; and in the second column were the names of South Abington and other towns in Massachusetts, followed by "New York;" and the date of the preceding page was June 20th. The postmaster, against the plaintiff's objection, was permitted to testify that the entry upon the record of the date of receiving this letter was incorrect; that the contents of the mails were entered in these columns in order as the mails arrived; that, from his knowledge of the course of the mails and their time of arrival, the New York mail was the first on the morning of June 21st,

---

* By the U. S. St. of 1855, c. 173, § 3, the postmaster general of the United States is "authorized to establish a uniform plan for the registration of valuable letters on application of parties posting the same." 10 U. S. Sts. at Large, 642.

The regulations of the post-office department, c. 36, contain provisions for the registration of such letters at the office of mailing, giving receipts therefor to the person depositing them; for the mode of keeping accounts thereof, and of transmitting such letters and the letter bills thereof; and that on their receipt at the distributing office the clerk who opens and distributes the mail shall compare them with the bill, and "pass it, with the letters, to the clerk who keeps the account of registered letters received for distribution, who will enter its contents in his account."

and the mail from South Abington must have arrived on the evening of June 20th, and the entry of the date of June 21st, although correct for the New York mail and what followed it, was not correct for what preceded it, including South Abington; that the date at the top of this page should have been "June 20th," and that "June 21st" should have been entered in the first column, opposite the words "New York" in the second.

Cyrus G. Gurney, being called by the plaintiff, testified that about the 9th of June he demanded payment of the note, and "that the deceased said that he would send the money to him by mail to Taunton, either the next week or the week after; and the witness replied to him that he would send the note as soon as he received the money." The witness, as the bill of exceptions added, "also testified to some conversation between the deceased and himself as to his (Gurney's) post-office address, and the course, regularity and safety of the mails between South Abington and Taunton. He further testified that he called at the post-office at Taunton and inquired for letters, every night, from the 11th day of said June until the 23d inclusive, but never received any letter from the deceased or any money. This was all the evidence offered as to any agreement as to how the money was to be sent, or at whose risk, or how the note should be surrendered."

The plaintiff requested the court to instruct the jury, "that unless Cyrus G. Gurney either intended or consented to be held responsible for the safe transmission of the money by mail, the risk was on the defendant's intestate." But the judge instructed the jury "that if the proposition to send by mail came from the defendant's intestate, and was merely assented to tacitly or otherwise by Cyrus G. Gurney, it would be sent at the risk of the deceased; but if the proposition came from Gurney, and was assented to by the deceased, and the deceased in due time deposited the letter properly sealed and directed, and postage prepaid, containing the money, in the South Abington post-office, the money would be at the risk of Gurney, and from that time, if the money was sent by mail in pursuance of a mutual

understanding and agreement that it should be so sent, had between the deceased and Gurney, and after they had consulted together and determined upon the mode of its transmission, then the money, after being deposited in a letter as above in the South Abington post-office, would be at the risk of Gurney." The verdict was for the defendant, and the plaintiff alleged exceptions.

*B. W. Harris,* for the plaintiff.

*B. Sanford,* for the defendant, to the point that the instructions were sufficiently favorable to the plaintiff, cited 2 Parsons on Con. 152, and cases cited in note.

BIGELOW, J. 1. The register of letters, received at the post-office at Taunton, being an official record authorized by law to be kept, was admissible in evidence. 1 Greenl. Ev. § 484.

2. The evidence of the postmaster as to the error upon the register in the date of the receipt of the letter was rightly received. The register was not conclusive as to this date. A party has always the right to prove that a fact is different from that which it would appear to be by a portion of his own evidence. If this were not so, he would be bound by the innocent mistakes of witnesses and third parties. He can be allowed to prove the exact truth, without impeaching the evidence offered by himself. The evidence in this case was not offered to contradict the register, but to show the regular and due course of the mail, which was clearly competent. Incidentally it also showed that a date in the register was probably erroneous. Besides, the exact date of the receipt of the letter in question was quite immaterial. The real and material inquiry was whether it was received at all.

3. The instructions given to the jury were not adapted to the case, and did not properly meet the request made by the plaintiff's counsel for a different ruling. The general rule of law is that the duty lies on the debtor to pay his debt to his creditor personally or to his authorized agent. The burden of proof to show a payment of a debt is not sustained therefore by proof that a letter, containing the requisite amount, directed to the creditor, was duly deposited in the post-office. The debtor must

go further. He must also show that the creditor authorized this mode of remittance, either by express assent or direction, or a usage and course of dealing from which such assent or direction may be fairly inferred. If this can be shown, then the transmission is at the risk of the creditor; otherwise, it lies upon the debtor. *Warwicke* v. *Noakes,* Peake, 67, 186. *Walter* v. *Haynes* Ry. & Mood. 149. 2 Greenl. Ev. § 525. *Wakefield* v. *Lithgow,* 3 Mass. 249. The instructions given to the jury on this point did not state the rule of law with distinctness and accuracy. They seem to make the case depend on the question whether the proposition to transmit by mail came from the plaintiff or from the defendant's intestate. That was a fact wholly immaterial. The real question was, whether the plaintiff authorized a remittance by mail, without qualification; or whether such authority was accompanied with any condition as to the risk of such transmission. As this question does not seem to have been passed on by the jury, the case must be tried anew.

*Exceptions sustained.*